## HIRAM B. ROSE v. WILLIAM W. JACKSON.

*Pleadings—Averment of Assignee's Title—Special Counts should be Complete in Themselves—Want of Consideration—Damages for failure to procure Discharge of Mortgage.*

The record must be assumed to contain all material evidence.

Every special count in a declaration must be regarded as setting up a separate claim.

A plaintiff declaring specially upon an express contract between third persons alone, must aver his title and then make out by evidence the same contract as that set forth in his declaration, and his right and title as alleged.

The right to sue upon a contract as assignee must be positively averred, and an allegation of the assignment in the consolidated common counts will not support a recovery upon a special count in which it is not averred. Nor would a mere additional allusion to the assignment in the special count be sufficient.

A demurrer to special counts would not admit facts stated only in the consolidated common counts.

A special count upon a contract is bad on its face if it omits an essential part of the contract.

A declaration by the assignee of a contract recited that a third person was indebted $12,000. and that in consideration of his giving his note to defendant for $3,500, secured by a mortgage on his farm, the note and mortgage to be used to raise money to pay off the debt, defendant undertook to pay and discharge the debt, together with the note for $3,500. *Held* that no consideration was shown for any promise to do more than apply the proceeds as far as they would go to the uses specified.

Damages for failure to perform a contract to procure the discharge of a mortgage cannot be claimed if it does not appear that the mortgage was foreclosed or the claimant damnified.

Error to Kalamazoo.    Submitted November 21, 1878. Decided January 8, 1879.

Assumpsit.    The facts are in the opinion.

*Brown, Howard & Roos* for plaintiff in error.

*Severens, Boudeman & Turner* for defendant in error.

Graves, J.  Jackson recovered general damages againt Rose upon a declaration in assumpsit containing, *first,* three special counts; *second,* the common counts consolidated into one for causes of action alleged to have been derived by assignment from Cyrus S. Higgins; and, *third,* the common counts consolidated into one for causes of action alleged to have accrued directly from Rose to Jackson. . Rose alleges error.   A number of points are made

specifically, but there are others which the objections particularly taken require to be noticed.

The record appears not to contain all the evidence which was given, but it must be assumed that nothing has been omitted which would obviate, if inserted, any substantial exception in the case. Nothing appearing to the contrary, it must be assumed the record is not wanting in fidelity, and that no matter on either side material to the settlement of any legitimate question has been left out.

The bill of exceptions contains no evidence applicable to the general counts, and counsel on both sides have entirely disregarded those parts of the declaration and have proceeded as though they were destitute of importance in the case. It is reasonable to conclude that the verdict rests on the special counts and that the others are mere make-weights of the pleader.

It is important to see what were the true issues before the jury. The precise contract laid ought to be regarded and the plaintiff's connection with it noticed.

The case being one of express contract between third persons alone, and specially counted on, it was incumbent on the plaintiff to aver his title and then make out by evidence the same contract set forth and his right and title as alleged.

The first count, after stating as inducement that one Cyrus S. Higgins had joined as co-maker with one Willard Higgins and for his accommodation in sundry promissory notes for $12,000 in all, and had thus become indebted to various parties to that extent, proceeds to allege that thereupon said Cyrus S. Higgins, at the request of the defendant Rose, made a verbal agreement with Rose, whereby the latter agreed that if said Cyrus S. would give his note for $3,500, secured by mortgage on his farm, to him (said Rose), to be used by the latter to raise money, then he (said Rose) would dispose of said note and mortgage for cash and in a reasonable time pay or cause to be paid all of said notes for $12,000 or

procure the liberation of said Cyrus S. from liability thereon, and further would pay or cause to be paid and discharged in a reasonable time the note and mortgage for $3,500.

It is then averred that said Cyrus S. gave his note and mortgage to Rose for $3,500, payable in three years with annual interest at ten per cent., and that Rose sold the securities to one Peck for $3,500; and that although a reasonable time had elapsed, and said Cyrus S., prior to assignment afterwards mentioned, and the plaintiff Jackson subsequent thereto, had requested Rose to pay and discharge said notes for $12,000 and pay and cause to be discharged the note and mortgage for $3,500, he, said Rose, had refused to do either, and that said mortgage had been foreclosed and the property sold on the foreclosure to a third party to the damage of said *Cyrus S. Higgins* of $10,000.

The second count after stating the same inducement as the first in regard to the notes for $12,000, and further that Rose being desirous to buy certain real estate and personal property then offered at public sale at Otsego in Allegan county of the value of $12,000, alleges that Rose made offer to said Cyrus S. Higgins that if he would give his note on three years time for $3,500 with interest at ten per cent. to him, said Rose, together with his mortgage on the place mentioned in the first count to secure the note, to the end that he, said Rose, might sell and dispose of said mortgage for cash and with the proceeds purchase said real and personal property to be sold as before mentioned at public auction, then he, Rose, would in a reasonable time pay or cause to be paid the said notes for $12,000, and within like time pay and cause to be discharged the said note and mortgage for $3,500.

It then avers that said Cyrus S. thereupon gave the note and mortgage to Rose for $3,500, who afterwards disposed of the same for $3,500 in money and therewith bought the before mentioned real and personal property

at auction, the same being worth $3,500; that it then became Rose's duty to cause the notes for $12,000 to be paid and the note and mortgage for $3,500 to be paid and discharged in a reasonable time; that he refused to do either, and that said notes for $12,000 continued unpaid and that the mortgage for $3,500 had been foreclosed and the property sold to a third party to the damage of said *Cyrus S. Higgins* of $10,000.

The third count first recites that Cyrus S. Higgins was indebted and justly obligated with Willard Higgins for more than $12,000, and then alleges that in consideration of that fact and in further consideration that said Cyrus S. had given his note and mortgage to Rose on three years' time for $3,500 with interest at ten per cent. per annum, and which note and mortgage Rose had disposed of to a third party for $3,500, he, Rose, promised said Cyrus S. that he "would pay or cause to be paid and discharged all of aforesaid notes signed by said Cyrus S. Higgins with Willard Higgins to various parties as aforesaid, within a reasonable time thereafter" "and would also within such reasonable time pay or cause to be paid and discharged the said note and mortgage for $3,500."

And it is then averred that a reasonable time had elapsed and still Rose had refused to perform his promise and had wholly failed to pay said notes signed as before mentioned by said Cyrus S. with said Willard to the great loss, inconvenience and trouble of the said Cyrus, and that said notes remained outstanding claims and demands against him, and further that Rose had refused to pay and discharge the note and mortgage for $3,500, or cause the same to be done, whereby said Cyrus S. Higgins had been put to great cost, inconvenience and expense, and said mortgage had been foreclosed and the premises sold on the foreclosure to a third party in whom the title had become absolute, and that by reason of Rose's refusal to perform his agreement with

said *Cyrus S. Higgins, the latter had* suffered damage to the amount of $10,000.

First. Each of these counts must be regarded as a separate claim (*Picard v. McCormick*, 11 Mich., 68; *Nelson v. Swan*, 13 Johns., 483; 1 Chitty's Pl., [16 Am. ed.] 428; Stephen's Pl., [2 ed.] 318, 319), and whilst all severally set up a breach on the part of Rose of his special contract with Cyrus S. Higgins alone as the sole ground of action, still neither of them contains any averment of Jackson's mode of accession to the right of action or even of the fact of his being owner of it, and hence his title to sue on account of the grievances alleged in these counts is no better on the face of the record than that of any other person. Indeed they all conclude to Higgins' damage. *Sistermans v. Field*, 9 Gray, 331; Gould's Pleadings, ch. 4, § 8.

The statement at the close of the first consolidated count of an assignment by Cyrus S. Higgins to the plaintiff is not a part of the special counts nor matter of inducement. The fact is one to be maintained by positive averment, and the allegation of it where it occurs does not show the plaintiff entitled to sue on the causes of action in the special counts. Neither is the allusion in the first special count to something to come afterwards in regard to an assignment sufficient to show title in that count.

A demurrer to the special counts would not have admitted the facts in the remote and separate statement placed at the end of the later common counts consolidated.

Second. The third count is bad upon its face, because, without suggesting other reasons, it shows that a part of the contract essential to the count, and assumed to be in it, is wholly omitted. It is next observable that were other objections removed there would be no foundation for contending in favor of a right to recover on

either count for any failure to get rid of Higgins' liability on the notes for $12,000. Certainly no case is made for recovering damage on account of that part of the transaction. It is not alleged that Cyrus S. Higgins has paid anything upon those notes or about them, or that any collection has been made or attempted from him, and there is no other foundation pleaded for damages in that branch of the case.'

Neither the arrangement described in the first count nor in the second count fairly imports that Rose and Higgins traded their credit and that Higgins exchanged his note and mortgage absolutely for Rose's unqualified personal agreement. Rose was not to have dominion as owner over the note and mortgage. They were to be executed to him in order that they might be used in his name to effectuate the ends of Higgins. He was not to be allowed to keep them or turn them according to his discretion, but was required to sell them for cash and apply the proceeds without unreasonable delay. The power of Higgins over them was provided to be perpetuated by the arrangement for creating them, notwithstanding their full delivery. The kind of disposition to be made of them was fixed at the outset and the avails were to be applied in Higgins' interest, and hence on the face of the declaration the entire consideration for the alleged undertakings on the part of Rose was the reception of Higgins' note and mortgage to be used according to the method stipulated for by Higgins and for his benefit.

Surely it is extravagant to suppose it was designed that Rose in consequence of being supplied by Higgins with the note and mortgage for $3,500 on three years' time, as a fund positively devoted to Higgins' objects, was to be bound personally and absolutely not only to restore to Higgins within a reasonable time the entire fund of $3,500 without diminution, but likewise within the same time to pay or wipe out the indebtedness of Higgins of $12,000 or more. Lawes Plead. in Assumpsit, 55; *Game v.*

*Harvie*, Yelv., 50; *Phetteplace v. Steere*, 2 Johns., 442. No such construction can be fairly given to the transaction as pleaded. If it be said that Higgins swears such was the design, then the most reasonable view is that as the note and mortgage were brought into existence for the use of Higgins, the mortgagor, and were in substance his means as between him and Rose, and not in essence or in right or in interest Rose's property, there was no consideration for any promise by Rose to Higgins to do more than apply the proceeds so far as they would go in the uses provided for. We do not understand there is any complaint that the mortgage and note were not turned in. The claim appears to be that Rose was bound to go a great deal further and did not.

Third. It is not needful to rehearse the evidence. The fact is clear that so far as it may be supposed to favor the inference of a contract it imports one materially different in point of substance from any assumed to be described in the declaration. The testimony of Cyrus S. Higgins, whom Jackson called to describe the terms and identify the arrangement, does not show or tend to show such an arrangement as the declaration sets forth. Among other matters in his account he makes out that Rose was to have one year to perform in and not merely a reasonable time, as alleged, and it is conceded or at all events not questioned that the property under the execution was expected to cost and did cost $4,000, and that the note and mortgage only brought $3,000, and that under and according to the arrangement in question other parties, or at least another party, raised and put in $1,000 of the consideration embarked. It is also noticeable that no evidence appears to explain what became of the note and mortgage for $3,500. There is nothing to prove that it was foreclosed or to afford any color for claiming damages under these special counts on this part of the transaction. If the case required it we might show how dissimilar the transaction marked out by the evidence is

in other respects from the transaction in either count. The variance is substantial.

Without following the method adopted by counsel, questions have been considered which appeared to be essential and fairly involved, and the result is that the judgment must be reversed with costs and a new trial granted.

The other Justices concurred.